**STATE OF WEST VIRGINIA**

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **D.K. and N.K.**

**No. 18-0646** (Randolph County 2017-JA-064 and 2017-JA-065)

## MEMORANDUM DECISION

Petitioner Mother J.F., by counsel Melissa T. Roman, appeals the Circuit Court of Randolph County's June 14, 2018, order terminating her parental rights to D.K. and N.K.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), G. Phillip Davis, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 25, 2017, the DHHR filed an abuse and neglect petition alleging that petitioner abused methamphetamine and was unable to provide proper care for the children. On August 23, 2017, a police officer responded to a call from petitioner's neighbor and found N.K. wandering in the yard. According to the officer, he remained at the scene with the child for forty-five minutes. During that period, neither parent searched for the two-year-old child. Additionally, the DHHR received a referral in July of 2017 that reported petitioner was under the influence of methamphetamine in the home while the children were there. At that time, the father was "passed out cold" and there were six other men in the home that were under the influence of methamphetamine. Upon investigation, a Child Protective Services ("CPS") worker observed very little furniture and little food in the home. The children were observed to be "unkempt, dirty," and appeared to not have bathed in several days. The CPS worker observed that D.K. had knots in his hair from his hair not being combed. She also observed that N.K.'s diaper was full and had not been changed in several hours. Petitioner was interviewed by the CPS worker and admitted to a history of substance abuse, but denied that she was currently abusing any

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

substances. However, petitioner told the CPS worker that she did not want to voluntarily drug screen because "occasionally after she gets her bills paid up . . . she will go buy a bag of crystal meth." Petitioner waived her preliminary hearing.

On October 3, 2017, the circuit court held an adjudicatory hearing during which petitioner stipulated to the allegations of abuse and neglect. Accordingly, petitioner was adjudicated as an abusing parent and was granted a post-adjudicatory improvement period. On November 14, 2017, the circuit court held a review hearing. The DHHR reported that petitioner had not been fully compliant with her post-adjudicatory improvement period and that they received a report that petitioner had recently overdosed. However, during a January 2, 2018, review hearing, the DHHR reported that petitioner was complying with the terms and conditions of her post-adjudicatory improvement period. On February 15, 2018, the circuit court held a review hearing and was advised that petitioner recently tested positive for substances. Nevertheless, the circuit court ordered that petitioner's improvement period continue under the previously ordered terms. On March 21, 2018, petitioner failed to appear for the scheduled review hearing, but was represented by counsel. Petitioner's counsel reported that she spoke to petitioner a few weeks prior, but that she did not know why petitioner did not attend the hearing. The circuit court continued the hearing. However, petitioner also failed to appear for the rescheduled hearing on April 26, 2018. The circuit court found that petitioner failed to successfully complete her post-adjudicatory improvement period because she failed to submit to drug screens, participate in visitation, and participate in services. The circuit court set the dispositional hearing, and on May 14, 2018, the DHHR filed a motion to terminate petitioner's parental rights.

On May 21, 2018, the circuit court held a dispositional hearing. The DHHR presented evidence that petitioner tested positive for methamphetamine in February of 2018 and did not submit to any subsequent drug screens. According to petitioner's testimony, she had not had a phone or transportation since February of 2018. However, the circuit court noted that petitioner testified that she had been in town for medical appointments after February of 2018, but made no efforts to contact the DHHR. Petitioner had not visited the children since February of 2018. Petitioner testified at the dispositional hearing that she recently acquired a cellphone and transportation. She further testified that she was living with family members, that they did not have utilities, but that they were working on remedying that issue. After considering the testimony, the circuit court found that petitioner was initially compliant with her post-adjudicatory improvement period, but failed to contact the DHHR or participate in services after February of 2018. The circuit court also found that petitioner was unwilling or unable to adequately provide for the children's needs. The circuit court noted that petitioner did not have appropriate housing for the children and had not visited with them or drug screened in the preceding three months. Based on the evidence, the circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of her parental rights was in the children's best interests. Ultimately, the circuit court terminated petitioner's parental rights in its June 14, 2018, order.[2] It is from this order that petitioner appeals.

_____

[2]The father's parental rights were also terminated below. The permanency plan for the children is adoption in their current foster placement.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating her parental rights. In support, she asserts that she was "entitled to a [post-]dispositional improvement period." We find petitioner's argument to be meritless. West Virginia Code § 49-4-610(3)(D) provides that a when a parent has previously been granted an improvement period, the parent must prove that "since the initial improvement period, the [parent] has experienced a substantial change in circumstances" and that "due to that change in circumstances, the [parent] is likely to fully participate in the improvement period[.]" Additionally, we have stated that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015).

Although petitioner argues that she was entitled to a post-dispositional improvement period, the decision whether to grant an improvement period at disposition rests solely within the discretion of the circuit court. Petitioner initially complied with the terms and conditions of her post-adjudicatory improvement period. However, in February of 2018, petitioner tested positive for methamphetamine and stopped participating in services and visits with the children. She also missed two review hearings. While petitioner argues that she was unable to participate in services because she did not have transportation or a cellphone, the record shows that petitioner traveled to Elkins, West Virginia, from her residence for medical appointments. The record also shows that petitioner failed to contact the DHHR during that time. Further, petitioner did not provide any evidence of a change in her circumstances that demonstrated that she would be likely to participate in a post-dispositional improvement period and, therefore, she did not meet the applicable burden to receive one. As such, we find no error.

We also find no error in the circuit court's termination of petitioner's parental rights. Petitioner asserts that, during the proceedings, she took steps to address her parental deficiencies. We do not find this argument persuasive. West Virginia Code § 49-4-604(b)(6) provides that

3

circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent "ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child[.]"

As discussed, petitioner failed to substantially comply with her post-adjudicatory improvement period. After a period of compliance with the terms of the post-adjudicatory improvement period, petitioner tested positive for methamphetamine in February of 2018 and subsequently ceased her participation in drug screens, visits, and other services. Further, the record shows that petitioner was unable to provide an appropriate home for the children. Based on this evidence, the circuit court was correct in finding no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that the termination of petitioner's parental rights was in the children's best interests. While she also argues that the termination of her parental rights in this matter was premature, we have held as follows:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4. Because of their young ages and the unlikelihood of improvement by petitioner, termination of petitioner's parental rights was necessary in order for the children to achieve permanency in their foster home.

Moreover, although petitioner argues that the circuit court should have utilized a less-restrictive dispositional alternative, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). For these reasons, the termination of petitioner's parental rights was appropriate.

4

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 14, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  November 19, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment